IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SHARON KAY BELL,

                                              OPINION AND ORDER

                Plaintiff,

                                              15-cv-48-bbc

     v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Sharon Kay Bell brought this suit seeking judicial review of a final administrative decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, denying plaintiff's application for disability benefits and supplemental security income. She contends that the matter requires a remand to allow the agency to consider new evidence it did not have when it denied her application for benefits. Alternatively, she asks the court to remand the case on the ground that the administrative law judge failed to give sufficient consideration to plaintiff's pain and inability to move around freely as a result of her degenerative disc disease.

      After reviewing the record from the Social Security Administration and the parties' briefs, I conclude that plaintiff has not shown good cause for her failure to present the new evidence to the agency and that the administrative law judge's findings are supported by substantial evidence. Accordingly, the commissioner's decision will be affirmed.

1

RECORD FACTS

A. Background

Plaintiff Sharon Kay Bell was born in 1960. In March 2007, she was injured at work by a falling pallet. She saw two doctors at the Mile Bluff Medical Center for treatment and had a three-month course of physical therapy that ended in August 2007. She went back to work for about four months, but was laid off when business slowed and never re-hired. She underwent a lumbar spine laminectomy in July 2007 that resulted in the improvement of her back pain, but has been experiencing renewed pain since 2011.

Plaintiff is about 5'5" and weighs about 135 pounds. She lives with her husband, son and grandson in a mobile home. She has not worked since October 11, 2011, her amended alleged onset date. (Earlier in her lawsuit she had alleged an onset date of November 15, 2008.)

B. Medical Record

Plaintiff saw doctors at the Mile Bluff Medical Center frequently after her work injury. In the beginning, they imposed certain conditions on her return to work that her employer refused to follow. AR 382. On April 17, 2007, Dr. Buss took her off work. Id. Dr. Kevin Coleman diagnosed mid thoracic back pain. Id. Plaintiff participated in physical therapy from April 2007 through August 2007. AR 413-18.

In May 2007, doctors ordered an MRI examination that revealed a "rather large" disc extrusion at the L3-4 level of plaintiff's spine, AR 441, as well as evidence of mild diffuse

disc bulging and mild degenerative disease of the facet joints, without central canal stenosis at L4-5. Id. In addition, the MRI showed evidence of mild to moderate disc bulging with protrusion into the lateral recess but only very mild degenerative disease of the facet joints and normal appearing left neural foramen at L5-6 and minimal diffuse disc bulging at L6-S1. Id.

On July 17, 2008, plaintiff had back surgery. AR 288. Dr. Michael Ebersold performed a left L2-L3 partial hemilaminectomy and removed a portion of an extruded disc. AR 291. He limited plaintiff to lifting no more than 15 to 20 pounds for the following four weeks. AR 288.

Plaintiff's file shows no primary care treatment from November 2008 (when she saw a doctor for respiratory problems but made no mention of any back pain), AR 376-77, until November 30, 2010, when she returned to the Mile Bluff Clinic, complaining of back swelling and lower back pain radiating into her buttock and right lower extremity, with numbness and tingling. AR 299. The treating doctor ordered an MRI, which failed to explain her symptoms, recommended physical therapy and prescribed diclofeniac, gabentin and Tylenol. Id.

At a December 23, 2010 visit to the clinic, plaintiff reported that her pain was less. The doctor observed that she was able to heel and toe walk and had negative straight leg raising in both the sitting and supine positions, but some discomfort in simulated rotation. AR 297. The doctor recommended she see a neurologist for an EMG and he did not continue her opioid prescription. Id. Reviewing her MRI scan from December 3, 2010, he

found postoperative changes from her partial diskectomy but nothing otherwise to explain her symptoms at this time. Id.

At a March 18, 2011 visit to the clinic, plaintiff reported that her pain was so severe as to cause her to be dizzy and vomit. AR 296. She also reported that she had been out of gabapentin for three weeks but had not called to replace it. AR 296. The doctor noted that she appeared quite comfortable, had full range of motion at her hips, knees and ankles and negative straight leg raising and normal gait and denied any numbness, tingling or bladder incontinence. Id. He noted that plaintiff was checking to see whether worker's compensation would cover the cost of an EMG. Id. (It does not appear that an EMG was ever done.) Other than an EMG, he was not able to recommend any further investigation, adding that "[p]atient already has had an MRI scan of the lumbosacral spine on December 3, 2010 which showed no focal findings." Id.

On April 19, 2013, plaintiff saw Dr. Steven Lamberson at the Marshfield Clinic, complaining of lower back and lower extremity pain. AR 322. He found that she had considerable limitation of trunk flexibility, moderate tenderness over her mid and lower lumbar spine as well as the lumbar paraspinal muscles bilaterally, no mid gluteal or sciatic notch tenderness on either side, mild limitation of internal and external rotation of the hips and no significant thigh or calf tenderness on either side. Id. She had normal strength, a stiff gait, and pain with straight leg raising of 45 degrees on the right and 60 degrees on the left in the sitting position. Id. Lamberson prescribed gabapentin to decrease her pain hypersensitivity, along with a trial of a muscle relaxant and a prescription for physical

therapy. AR 324. He also arranged for an MRI; a Marshfield radiologist reviewed it and saw little change in the images and "no intradural enhancing pathology." AR 327. Lamberson found that she had mild limitation of her hip range of motion and considerably limited trunk flexibility and that she changed positions frequently and demonstrated a stiff gait, but maintained normal strength and deep tendon reflexes. AR 323.

In May 2013, plaintiff began pain management treatment at Marshfield Clinic with nurse practitioner Shannon Treptow. AR 330. During the initial examination, plaintiff appeared uncomfortable, tearful and unable to lie comfortably in the supine position; however, she had full strength in all her extremities, normal pulses, sensation and reflexes and a normal gait. AR 336. Although Treptow noted excessive pain behaviors throughout the interview and examination, she observed that as the session progressed, plaintiff moved about quite easily, bending over to pick up her pants to get dressed, then sitting in a chair and lifting her leg to put on her pants without any particular difficulty. Id. Treptow's assessment was low back pain, lower extremity pain, myofascial pain and lumbar radiculopathy. Id.

By July 22, 2013, plaintiff's condition had improved. She told Treptow she had been doing exercises at home. AR 352. In September, she said she had more pain and that she had not been exercising. AR 356. She had some mild tenderness in various places but was able to get on and off the examining table without difficulty and had full flexion and extension, full upper and lower extremity strength and a normal gait. AR 358.

Plaintiff had a consultative examination in March 2012 with Dr. Ward Jankus, who

found no significant lower extremity nerve root compression either by history or on physical examination, intact range of motion, a nonfocal gait pattern, no weakness walking on tiptoes and heels, no difficulty sitting or maneuvering onto the examination table or with grasping or manipulating. AR 302. She could forward flex 80 degrees (or about four inches short of touching her toes with her fingers) before she felt any pain, lateral side-bend 35 degrees to both sides and had no particular tenderness in her back upon palpation. Id. She had full range of motion at her shoulders, elbows, wrists and fingers and in her hips, knees and ankles. Id. She had full strength in her lower extremities, intact light touch throughout both legs and negative straight leg raising at 80 degrees in the sitting position. Id.

Jankus's review of x-rays taken on March 26, 2012 showed "[t]ransitional lumbosacral segment with pseudoarticulation on the right and mild to moderate degenerative changes in the lower lumbar spine," with no acute findings. Plaintiff told Jankus that she could stand for 1 1/2 hours at a time, could sit for as long as one or two hours while in a car but preferred to stand after 30 minutes of sitting when she is at home. AR 301. She estimated that she was on her feet about five hours a day. Id. Jankus did not give any opinion about plaintiff's ability to work.

Two state disability services doctors reviewed plaintiff's medical records and concluded that plaintiff could work at the light exertional level. On April 25, 2010, Dr. Syd Foster found that plaintiff could lift and carry 20 pounds occasionally, ten pounds frequently, stand or walk about six hours a day, sit for six hours and had an unlimited ability to push or pull (other than the limits on lifting and carrying), AR 306, and that she had no

postural, environmental, manipulative, visual or communication limitations. AR 307-09. After reviewing Dr. Jankus's report and plaintiff's reports of her daily activities, Foster found that plaintiff retained the residual function capacity to perform at the light level. AR 313.

Dr. Mina Korshidi's conclusion matched Dr. Foster's with respect to plaintiff's physical abilities and limitations. Ar 114-15. She also found that plaintiff would be able to do light exertion work and that she was not disabled. AR 115-16.

On September 22, 2013, Dr. Lamberson completed a Lumbar Spine & Pain Medical Source Statement, in which he said that plaintiff suffered from chronic low back pain and left leg myofascial pain, had a poor prognosis and constant, severe, dull or sharp leg pain and aching across the lower back. Dkt. #12-1. He estimated that plaintiff could sit for no more than one hour at a time, stand for no more than ten minutes at a time, sit for no more than a total of four hours in a day, stand or walk no more than two hours in a day, needed a job in which she could change positions at will and needed to be able to walk around every hour for at least ten minutes. In addition, she would have to take two unscheduled, 15-minute breaks during the work day. Id. at 2-3. He found that plaintiff could lift and carry 10-20 pounds occasionally, but rarely twist, stoop or climb stairs, id. at 3, and estimated she would be off task 25% of the time and absent more than four days a month. Id. at 4. Lamberson's report was never made part of the agency record.

C. Administrative Hearing

At the administrative hearing on October 13, 2013, plaintiff testified that she had

7

completed seventh grade, AR 71, and had not worked full-time since October 11, 2011. AR 72. She testified that she could stay on her feet for no more than a half-hour at a time, AR 86, before having to sit down in her recliner with her feet up. She estimated that she spent three-quarters of the day in the recliner. Id. In the mornings, she gets her grandson off to school, then tries to clean her house, vacuuming, dusting and doing dishes in short intervals. AR 87-80. She cannot carry a full laundry basket or bend over to take clothes out of the washer or put them in so her husband or grandson help her. AR 87-88. She cannot carry a gallon of milk. AR 89. She finds it difficult to sit and watch television for any period of time without getting up and walking around. AR 95.

The administrative law judge called Jacquelyn Wenkman to testify as a vocational expert familiar with Social Security regulations. He asked Wenkman to assume a person of plaintiff's age, education and work experience, who is able to perform light work, never climb ladders, ropes or scaffolds and stoop and crouch only occasionally. AR 99. Wenkman testified that, from her review of plaintiff's file and her past jobs, plaintiff could still perform two of her past jobs, either as a deli clerk or as a sorter of agricultural products. AR 99. In addition, she could work in food preparation, cleaner or doing light assembly. Id. If she needed a sit/stand option, she could work at light assembly jobs, some inspection jobs and sorting. AR 100-01. If she were able to perform only sedentary, unskilled jobs, she could work as a sorter, office helper. AR 101-02. If she had to change positions frequently, there would be jobs available in sorting, greeter-receptionist and surveillance monitor. AR 103-04. However, if plaintiff could work only four hours a day, she could not work competitively at

any exertional level. AR 102. For each of the positions Wenkman listed, she gave her estimate of the number of jobs that would be available in the state of Wisconsin, relying on numbers she found in the Dictionary of Occupational Titles. AR 99-102.

At the end of the hearing, plaintiff's counsel said he was waiting for a medical source document from Dr. Lamberson. He told the administrative law judge that he would notify him if "something came up," AR 105, but never did so.

### D. Administrative Law Judge's Decision

The administrative law judge issued his decision on January 30, 2014, concluding that plaintiff was not disabled under the Social Security Act, but retained the ability to work in certain light exertional occupations that could accommodate her physical limitations. He went through each of the five steps for determining disability, 20 C.F.R. § 44.15209(a). He found that (1) plaintiff had not engaged in any substantial gainful activity since her alleged onset date; (2) she had the severe impairment of degenerative disc disease, but (3) her impairment did not meet or medically equal the criteria of any listed impairment; (4) she was unable to perform any past relevant work; and (5) she had the residual functional capacity to perform such sedentary, unskilled jobs as assembly and inspection and such light, unskilled jobs as that of sorter. AR 39. He found from Wenkman's testimony that there were about 12,000 assembly jobs in Wisconsin, about 1600 inspection jobs and about 1800 jobs as sorters. AR 39.

In his decision, the administrative law judge reviewed plaintiff's medical records and

reports from treating physicians, as well as the evaluations by the two agency physicians and the consulting physician, Dr. Jankus. He concluded from his review that plaintiff had some functional limitations, AR 37, and that she "experiences pain and occasionally decreased range of motion as a result of degenerative disc disease," AR 34-35, that seems to be adequately controlled in light of the limited and presumably successful treatment. AR 36. He found, however, that the medical records did not support plaintiff's reports in all respects, particularly regarding the severity or the frequency of her symptoms, and that she did not require limitations or restrictions beyond those he included in her residual functional capacity finding. AR 37. He did not accept the agency physicians' evaluations in full, because those doctors had not had the opportunity to conduct physical evaluations of plaintiff, and he found that she was slightly more limited than the two doctors had found her to be. Id. He agreed with them that plaintiff could do light work but he believed she would require some additional accommodations, including a sit/stand option, "reduced postural maneuvers" and the opportunity to be off task about ten percent of the work day. Id.

The administrative law judge also found that plaintiff had no medical need to spend much of the day in a recliner with her legs elevated, AR 35, but that she would need certain accommodations in the work place: only occasional stooping and crouching and no climbing of ladders, ropes or scaffolds, a sit/stand option allowing her to sit or stand at will, provided she is not off task more than ten percent of the work day. Id. He considered plaintiff's "statements about the intensity, persistence, duration and limiting effects of her severe

medically determinable impairments, including [her] daily activities, work history and scope of treatment," and concluded that they did not support any additional limitations in her residual functional capacity. Id. He did not deny that plaintiff experienced pain and some restrictions on her range of motion on occasion because of the pain, particularly if she had to lift or carry heavy objects and sit, stand or walk for prolonged periods of time, AR 34, but he found from the evidence that she could perform the standing, walking and sitting requirements of light or sedentary work. AR 34-35.

OPINION

Plaintiff bases her motion for a remand of her claim on two issues: (1) she has new evidence in the form of Lamberson's report that supports a remand of her claim; and (2) the administrative law judge failed to give sufficient consideration to the pain resulting from her degenerative disc disease. I will begin with the issue of the purported "new evidence."

Under 42 U.S.C. § 405(g), a court may order that new evidence be added to the record before the commissioner, "but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding"; Shalala v. Schaefer, 509 U.S. 292 (1993) ("sentence-six remands may be ordered in only two situations: where the Secretary requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented before the agency." Id. at 296–98 n.2. In this case, plaintiff has failed to show either that she had good cause for her failure to provide the Lamberson report

11

or that the information in the report is both new and material.

Plaintiff alleges in her opening brief, dkt. #13, that although Lamberson prepared his report in advance of the hearing before the administrative law judge, her counsel was not aware of the report. This appears to be true, but it leaves unanswered the question why counsel never said anything about the report once he did receive it, at a time when he could have added it to plaintiff's file. In an affidavit filed in support of a sentence six remand, dkt. #12-1, he avers that the report was received in his office on November 12, 2013. Apparently, it was overlooked after it was received.

At the hearing, plaintiff's counsel had told the administrative law judge that "if something comes up or something, I can notify you," AR 105. The administrative law judge did not say that he would not accept a new filing or new piece of evidence. The administrative law judge's decision was not entered until January 30, 2014, so plaintiff's counsel had two and one-half months after receiving Lamberson's report in which to send a copy to the administrative law judge for consideration. He had two later opportunities to raise the matter, one in February 2014, when he asked for an extension of time in which to file additional evidence and a brief with the Appeals Council, AR 22, and a second in June 2014, when the Appeals Council told him he could send in additional evidence. AR 7. These continued oversights refute any argument that plaintiff can show good cause for her failure to alert defendant to add new evidence.

However, even if plaintiff could show good cause, she would run up against the second requirement that the evidence be both new and material. It did not contain any new

12

evidence, only Lamberson's opinions, all of which were based on his one examination of plaintiff in April 2013 and not on any new information from additional visits, new tests, x-rays or medical imaging results.

Plaintiff does not explain why Lamberson's report is "material," other than to say it "supports the testimony and medical record indicating that [plaintiff] could not work." Plt.'s Br., dkt. #13, at 9. This is nothing more than an assertion by plaintiff; she does not cite any evidence in the record to support the assertion. Because mere assertions do not suffice as argument and because plaintiff has not shown good cause for her failure to submit the report at a time when the agency could have considered it, plaintiff's motion to include Lamberson's report in the record will be denied.

Plaintiff's second argument is that the administrative law judge did not give sufficient consideration to the pain plaintiff suffered as a result of her degenerative disc disease. A review of his decision shows that he did consider the pain she was reporting, but concluded that it was neither as severe as she said it was nor so debilitating as to prevent her from working at a job within her exertional limits. He explained his reasoning in considerable detail. AR 29-37. His decision was not "patently wrong," Skarbek v. Barnhart, 390 F.3d 500, 505 (7th Cir. 2004), nor unreasonable and unsupported, Getch v. Astrue, 539 F.3d 473, 483 (7th Cir. 2008) (in light of discrepancies between plaintiff's testimony about his pain and the medical reports documenting his lack of symptoms, "it was not patently wrong for the [administrative law judge] to conclude that, although Mr. Getch's impairments were real, he had exaggerated their impact on his ability to walk").

13

Plaintiff objects to the administrative law judge's purported reliance on plaintiff's failure to seek medical treatment for the period from 2008 to 2010. (Plaintiff says "2010 to 2013" but that is clearly a mistake.) She points out that the court of appeals has held it improper to draw a negative inference from a lack of medical treatment without determining the reasons for it, such as lack of money for medical visits. Shauger v. Astrue, 675 F.3d 690, 696 (7th Cir. 2012). Plaintiff's objection would have more weight if it appeared from the administrative law judge's decision that he considered plaintiff's lack of medical treatment from 2008 to late 2010 of any real significance to his decision. He did mention it, but he devoted far more of his decision to the reports of the various treatment providers who were unable to find medical explanations for plaintiff's complaints, the lack of MRI evidence supporting plaintiff's complaints and the many discrepancies between plaintiff's subjective reports of pain and the objective evidence, which included her own reports of her daily activities.

Finally, plaintiff criticizes the administrative law judge's failure to consider that she had been referred to occupational therapy and given nortriptyline. Plt.'s Br., dkt. #13, at 14. She does not explain why this omission undermines his conclusions. As a general rule, a court need not consider perfunctory and undeveloped arguments or arguments that are unsupported by pertinent authority. Such arguments are considered waived. United States v. Lanzotti, 205 F.3d 951, 957 (7th Cir. 2000).

ORDER

IT IS ORDERED that plaintiff Sharon Kay Bell's motion for summary judgment, dkt. #11, is DENIED and the decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, denying plaintiff's application for disability insurance benefits and Social Security Income is AFFIRMED. The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 18th day of November, 2015.

                                      BY THE COURT:
                                      /s/
                                      BARBARA B. CRABB
                                      District Judge

"